IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRENCE K. MCDAVID,

        Plaintiff,

vs.                                          CASE NO. 1:11-cv-81-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability, disability insurance and for supplemental security income benefits. (Doc. 1.)  The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions.  (Docs. 18 and 19.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act") on June 8, 2006, alleging a disability beginning December 15, 2005.  (R. 57, 98-106.) They were denied initially and upon reconsideration.  (R. 57, 69-82.)  Plaintiff then filed a timely request for an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on March 30, 2009.  (R. 57.)  The ALJ issued a decision unfavorable to Plaintiff on May 26, 2009.  (R. 57-68.)  Plaintiff appealed the

ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on March 7, 2011.  (R. 1-5.)  Plaintiff filed the instant complaint on April 27, 2011.  (Doc. 1.)

## II.  FINDINGS OF THE ALJ

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 15, 2005.  The ALJ found at step two that Plaintiff had the following severe impairments: anxiety, depression, and cannabis abuse.  The ALJ found that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the Commissioner's Listings.  The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels but with the non-exertional limitations of being limited to simple, routine, repetitive tasks. (R. 62.) The ALJ concluded that Plaintiff was capable of performing his past relevant work as a general laborer.  (R. 67.)  Accordingly, the ALJ concluded that Plaintiff had not been under a disability from his alleged onset date through the date of the decision. (R. 68.)

## III.  ISSUES PRESENTED

Plaintiff argues that substantial evidence does not support the ALJ's findings. Plaintiff contends that (1) the ALJ should have found at step two that Plaintiff had the severe impairments of psychotic disorder and adjustment disorder with depressed mood; (2) the ALJ failed to complete a Psychiatric Review Technique Form and append it to the decision or incorporate the results therein; and (3) because the ALJ did not have a vocational expert testify at step four, the ALJ was biased against Plaintiff and violated his due process rights.  (Doc. 18.)

## IV.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by

---

[1] See 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V.  SUMMARY OF THE RECORD

### A.    Personal Background

Plaintiff, born in December 1974, was 34 years of age at the time of the administrative hearing.  (R. 98, 126.)  He reported having a high school education and prior work experience as a roof truss assembler, cook, and general laborer.  (R. 67, 98, 122-123.)

### B.    Medical History

On January 24, 2005, Meridian social worker Nancy K. Duke, MSW, ACSW, performed a mental health evaluation of Plaintiff at the Alachua County Jail.  Plaintiff denied any history of mental health treatment. He acknowledged daily cannabis use, which he began using as a child.  On mental status examination, Plaintiff was

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

somewhat somnolent at initial contact but was alert and oriented and verbal.  He was

evasive at times with somewhat restricted affect.  He offered a vague report of auditory

disturbances.  Ms. Duke recommended Plaintiff be evaluated for substance-induced

psychotic disorder.  She noted that Plaintiff's improvement in mental status, without

intervention, lended credence to the theory that the changes in his mental status were

directly related to his substance abuse.  She recommended substance abuse

treatment.  (R. 237-239.)    Plaintiff participated in a residential substance abuse

program at Meridian in late 2005 and early 2006.  A January 10, 2006 note from

Meridian Behavioral Healthcare indicates that Plaintiff was prescribed the anti-

depressant Zoloft.  (R. 181.)

       Clinical psychologist Jeff Gedney, Psy.D., performed a consultative

psychological exam on October 4, 2006.  Plaintiff alleged disability due to depression

and anxiety and reported quitting his most recent job because he was applying for

Social Security benefits.  Plaintiff presented as very defensive and uncooperative.  He

reported successful treatment with Zoloft after a December 2005 hospitalization for

depression, and that he continues to take the medication.  His thought process was

clear, linear and coherent with no evidence of unusual perceptions, attitudes, or beliefs;

there was no evidence of delusional or abnormal thought content; his mood was

somnolent with flat affect; and there was no evidence of unusual sensory experiences.

Judgment and insight were poor.  Dr. Gedney's prognosis for Plaintiff's return to work

was "probably good as he did not provide any psychiatric evidence suggesting an

inability to secure employment."  Dr. Gedney noted that Plaintiff maintained his own

apartment, drives, shares custody of his children, and maintained an on and off work history for 13 years.  It was not possible to anticipate the likelihood that Plaintiff could maintain a job.  (R. 286-288.)

Non-examining consulting psychologist Steven Wise completed a psychiatric review technique on October 19, 2006.  He noted substance abuse related depression. Dr. Wise opined that Plaintiff had mild limitations in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  (R. 289-302.)

Licensed psychologist Harry Krop, Ph.D., evaluated Plaintiff at the Alachua County Jail on November 7, 2006 to assess his competency to proceed on charges related to trespassing and resisting arrest on October 14, 2006.  During the interview, Plaintiff was extremely difficult to understand, became extremely agitated, and his thinking was extremely tangential and circumstantial.  He made numerous irrelevant comments and this thinking was not often coherent.  Dr. Krop opined that Plaintiff presented with a significant thought disorder and most likely had not been complying with any medication regiment.  His diagnostic impressions included Schizophrenia, Paranoid Type, and Polysubstance Abuse.  It was also likely he presented with a Personality Disorder but a formal mental status examination could not be conducted due to Plaintiff's attitude.  Dr. Krop opined that Plaintiff was incompetent to proceed in that he was not capable of assisting his attorney in legal proceedings.  He recommended inpatient psychiatric treatment and noted that Plaintiff met the criteria for involuntary commitment.  (R. 303-305.)

A Prison Health Services evaluation dated January 18, 2007, indicated that

Plaintiff had been off of Zoloft for three months and refused medications.  He refused to answer questions regarding drug or alcohol use.  He was evasive and sometimes incoherent during the interview but showed no signs or symptoms of psychosis. Plaintiff was referred to special housing and psychiatric treatment.  (R. 338-340.)

Licensed psychologist Clifford A. Levin, Ph.D., evaluated Plaintiff on January 29, 2007, to provide a second opinion regarding Plaintiff's competency to proceed on criminal charges.  During the private interview at the Alachua County Jail, Plaintiff presented as well-nourished with adequate hygiene.  Plaintiff was minimally cooperative and provided inconsistent information, making a formal mental status examination difficult to conduct.  Plaintiff was "quite bizarre at times and provided unusual and peculiar responses to some questions."  He appeared to be generally aware of the purpose of the exam and had at least average intelligence.  Plaintiff appeared clinically paranoid in his orientation to Dr. Levin.  There was no evidence of auditory hallucinations, although Plaintiff reported receiving "messages" while living at home and listening to his iPod.  His affect was mostly serious and restricted.  Plaintiff often appeared confused and thought disordered.  Dr. Levin opined that Plaintiff was incompetent to proceed in his criminal case.  Dr. Levin recommended Plaintiff be referred to the state forensic hospital system for psychiatric review and court-ordered adherence to any prescriptions.  (R. 306-309.)

It appears that on February 26, 2007, Plaintiff was arrested for larceny after being accused of stealing a laptop from an office at the McKnight Brain Institute.  (R. 351.)  His mental health screening at the jail after his arrest indicated that he had been

receiving outpatient treatment at Meridian in January 2007.  Plaintiff showed signs of emotional flatness but did not act in a strange manner or appear under the influence of alcohol.  Plaintiff reported that he never filled his prescriptions for psychotropic medications and did not remember the names of his medications.  Plaintiff was approved for general population with routine mental health referral.  (R. 354.)

A March 1, 2007 progress note from Prison Health Services indicates that Plaintiff did not feel he needed psychotropic medications.  He expressed that he would like to see a counselor at Meridian after being released from jail.  Plaintiff was smiling, pleasant, and cooperative and showed no signs of psychosis.  His mood was stable, his speech was normal, and his thoughts were coherent and logical.  Plaintiff's diagnoses were adjustment disorder and alcohol abuse.  He declined medications.  (R. 346.)  A March 9, 2007 progress note from Prison Health Services indicated that Plaintiff was calm and cooperative with logical thought form.  (R. 348.)

Non-examining consulting physician Dr. Alejandro Vergara, M.D. completed a Psychiatric Review Technique and Mental RFC Assessment on May 9, 2007.  (R. 358-371, 372-375.)  He opined that Plaintiff had severe impairments not expected to last 12 months: schizophrenic, paranoid and other psychotic disorders; anxiety-related disorder; and substance addiction disorders.  Dr. Vergara opined that Plaintiff had mild limitations in his activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace.  There was insufficient evidence to assess episodes of decompensation.  In support of these conclusions, he noted Plaintiff had improved in March 2007 after previously being deemed incompetent to stand trial.

Dr. Vergara also noted that Plaintiff's mother reported on April 12, 2007 that when he was not in jail, Plaintiff could take care of his personal needs, prepare simple meals, cleaned his apartment, did laundry, rode his bike, shopped, and used computers.  (R. 158-163, 358-371.)

In his mental RFC form, Dr. Vergara opined that Plaintiff had moderate limitations in understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods of time; working in coordination with others without being distracted by them; accepting instructions and responding appropriately to criticism; and setting realistic goals or making plans independently of others.  Dr. Vergara noted no significant limitations in the remaining functional areas.  Dr. Vergara concluded that when Plaintiff "takes prescribed medications with compliance, his mental condition improves significantly and he functions more adequately."  (R. 372-375.)

### C.   Hearing Testimony

Plaintiff testified at his March 30, 2009, hearing.  He testified that he takes Respidol for his mental health issues.  (R. 21.)  Plaintiff last worked in 2004 in roof trussing, which he did for about a year.  (R. 22-23.)  He testified that as an adult he has always done laborer-type work.   In late 2004 and 2005, he "made some bad choices" that caused him to lose his occupation.  He was arrested in 2004 for trespassing and was in the Alachua County Jail for a period of time.  (R. 23.)  He underwent mental health testing while incarcerated.  Plaintiff testified that since late 2004 and 2005 it has been kind of hard for him to concentrate and focus on completing assignments and

tasks.  Various things prevent him from completing things, such as "knowledge, the

muscular power, the strength" or other things.  (R. 25.)  He testified that his mother

drove him to the hearing.  (R. 25-26.)  Plaintiff testified that he could not remember how

his grades were in high school but he did want to improve them.  (R. 26.)

## VI.  DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's findings.

Plaintiff contends that (1) the ALJ should have found at step two that Plaintiff had the

severe impairments of psychotic disorder and adjustment disorder with depressed

mood; (2) the ALJ failed to complete a Psychiatric Review Technique Form and append

it to the decision or incorporate the results therein; and (3) because the ALJ did not

have a vocational expert testify at step four, the ALJ was biased against Plaintiff and

violated his due process rights.  (Doc. 18.)

### Severity of Impairments

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by not

finding that Plaintiff had the following severe impairments: psychotic disorder and

adjustment disorder with depressed mood.  (Doc. 18.)  The ALJ did find the following

severe impairments at step two: anxiety, depression, and cannabis abuse.  (R. 62.)

The Eleventh Circuit has held, as have numerous other circuits, that step two of

the sequential analysis may do no more than screen out de minimis claims.[21]  An

impairment or combination of impairments is severe at step two of the sequential

---

[21]  Stratton v. Bowen, 827 F.2d 1447, 1453 (11th Cir. 1987); see also Anthony v. Sullivan, 954
F.2d 289, 294-95 (5th Cir. 1992); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3rd Cir. 1989).

evaluation if it significantly limits one's physical or mental ability to do basic work activities.[22]  To be considered "severe"  a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."[23]

The ALJ is not required to identify all of the impairments that should be considered severe.  *See Heatly v. Commissioner of Social Sec.,* 382 F. App'x 823 (11th Cir. 2010) (finding harmless error where the ALJ determined the claimant's only severe impairment was status-post cervical fusion, despite a separate diagnosis of back pain). The only requirement at step two is to identify if any severe impairment exists.  *Id.* ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  Here, the ALJ determined at step two that Plaintiff suffered from the severe impairments of anxiety, depression, and cannabis abuse, a finding sufficient to satisfy step two.[24]

Moreover, while the ALJ did not specifically state at step two that the Plaintiff suffered from psychotic disorder or adjustment disorder with depressed mood there is little question that the ALJ accounted for these impairments by finding that Plaintiff suffered from anxiety and depression. Indeed, the only impairments which are in issue in this case – and the only impairments that the ALJ was required to discuss or consider – relate to Plaintiff's mental health issues. It is also equally clear that the ALJ

---

[22] 20 C.F.R. § 404.1520(c).

[23] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[24] Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987)("[w]hether or not it [the impairment] qualifies as a disability and whether or not it results from a single severe impairment ... is enough to satisfy the requirement of step two."); Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

considered all of Plaintiff's impairments in combination, having discussed in detail Plaintiff's testimony and medical history; his limitations due to these symptoms; and the diagnoses documented by in the medical records.  The Court, therefore, finds no error in the ALJ's step two finding.

Alternatively, even assuming *arguendo* that the ALJ should have included psychotic disorder in the list of impairments at step two there is no error because, as discussed below, the ALJ addressed and considered all of the Plaintiff's mental health history in evaluating Plaintiff's RFC at step four.

**The ALJ's Psychiatric Review Technique Findings**

Plaintiff argues that the ALJ erred by failing to append the Psychiatric Review Technique Form (PRTF) findings to his decision or to otherwise incorporate these results into his decision.  (Doc. 18.) The Court finds there is no merit to this argument.

The ALJ no longer is required to append the PRTF to his written decision but instead simply "must incorporate the pertinent findings and conclusions based on this technique." 20 C.F.R. § 404.1520a(e)(4).  The ALJ satisfies this requirement if the decision shows "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.*  The decision must also include specific findings as to the degree of limitation in the functional areas of activities of daily living; social functioning; concentration, persistence, or pace; and decompensation.  *Id.*

A review of the ALJ's decision discloses that he fully complied with these regulations.  The ALJ incorporated in the decision Plaintiff's medical history and

functional limitations and specifically concluded that Plaintiff had mild restrictions in activities of daily living and social functioning; and moderate restrictions in concentration, persistence, or pace.  The ALJ determined that Plaintiff has never had an episode of decompensation of lasting duration due to mental impairments.  (R. 66-67.)  The ALJ used these conclusions to support his finding that Plaintiff had the mental RFC to understand, remember, and carry out simple, routine, repetitive tasks compatible with unskilled work.  (R. 67.)  Accordingly, the Court finds no error in the ALJ's incorporation of his Psychiatric Review Technique findings into his written decision.

**The ALJ's Determination of Plaintiff's RFC**

While not directly listing it as an issue on appeal, the Plaintiff also contends that the ALJ did not properly assess his mental residual functional capacity.   The ALJ determined Plaintiff had the severe impairments of anxiety, depression, and cannabis abuse.  (R. 62.)  The ALJ concluded Plaintiff had the RFC to "perform work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive tasks."  (R. 62.)  In support of this conclusion, the ALJ expressly relied upon the opinions of Dr. Vergara, who opined that Plaintiff retained the mental RFC to understand, remember, and carry out short, simple instructions.  (R. 372-375.) The ALJ also afforded significant weight to the opinion of a Meridian social worker Nancy K. Duke, who opined that Plaintiff's changes in mental status are directly related to substance abuse.  (R. 237-239.)

Plaintiff points to the opinions of the psychologists, who examined Plaintiff for

mental competency in the criminal proceedings, in support of his contention that the ALJ erred in assessing Plaintiff's mental limitations. For good reason, and based upon the medical evidence, the ALJ assigned no substantial weight to the opinions of the psychologists who assessed Plaintiff's competency in connection with the Plaintiff's criminal proceedings. The ALJ properly noted that when Plaintiff was examined for competency to proceed in his criminal cases Plaintiff had not begun treatment. This was significant because the medical evidence showed Plaintiff made significant improvement within 12 months of implementation of treatment. For example, a medical report from Prison Health Services, dated March 1, 2007, evidences that Plaintiff showed a good response to treatment with psychotropic and antidepressant drugs in conjunction with his abstinence from drug and alcohol abuse. Thus, in the absence of drug and alcohol abuse and with appropriate treatment Plaintiff no longer exhibited any evidence of psychosis and did not evidence any gross cognitive deficits. Simply put, the ALJ recognized and properly concluded that after the criminal proceedings concluded – and after Plaintiff was no longer abusing alcohol and drugs – Plaintiff's mental condition significantly improved to the point that his only mental limitation was that he was limited to work that only involved the capacity to understand, remember and carry out short, simple instructions.

In assessing Plaintiff's mental RFC the ALJ also considered Plaintiff's activities of daily living.  (R. 65.)  Plaintiff completed a function report in August 2006,[25]

---

[25] The function report appears to have been filled-out by Plaintiff's mother. Regardless, the report is chargeable to the Plaintiff.

representing that he lived alone in an apartment and on a typical day would get cleaned up and go to the library.  He occasionally needed to be reminded to bathe.  Plaintiff could prepare simple meals, wash clothes, clean his apartment, and iron.  He went outside daily and traveled using public transportation or drove a car; he did his own shopping.  His interests included basketball and computers.  Plaintiff visited his children at least once a week and regularly went to the library and the gym.  He sometimes needed to be reminded of the days of the week and his appointments.  Plaintiff reported explosive behavior causing difficulty getting along with others.  According to Plaintiff, his illnesses affected his memory, concentration, ability to complete tasks, understanding, following instructions, and getting along with others. (R. 130-137.)  Plaintiff's mother completed another function report in April 2007, which disclosed that Plaintiff was still capable of the previous activities of daily living, with no more reminders needed to bathe, no driving due to lack of a driver's license, added interests of watching DVDs, and visits to coffee shops as well as the library to use the computer.  (R. 157-164.)

Most notably, Plaintiff's mental RFC was consistent with other medical opinions relating to Plaintiff's mental impairments.  When clinical psychologist Jeff Gedney, Psy.D., examined Plaintiff on October 4, 2006, Dr. Gedney found that Plaintiff's thought process was clear, linear and coherent with no evidence of unusual perceptions, attitudes, or beliefs; there was no evidence of delusional or abnormal thought content; his mood was somnolent with flat affect; and there was no evidence of unusual sensory experiences.  Judgment and insight, however, were noted as poor.  Dr. Gedney's prognosis for Plaintiff's return to work was "probably good as he did not provide any

psychiatric evidence suggesting an inability to secure employment."  Dr. Gedney noted that Plaintiff maintained his own apartment, drives, shares custody of his children, and maintained an on and off work history for 13 years.  (R. 286-288.)

Non-examining consulting psychologist Steven Wise completed a psychiatric review technique on October 19, 2006, opining that Plaintiff had only mild limitations in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  (R. 289-302.)  In sum, these opinions are fully consistent with Plaintiff's mental RFC, which limited Plaintiff to simple, routine, repetitive work tasks.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in his evaluation of Plaintiff's mental RFC.

**The ALJ's Step Four Determination**

Plaintiff also contends the ALJ erred at step four by not calling a VE to testify. Plaintiff argues that the ALJ failed to arrange for a vocational expert, thereby implying a predetermination of the claim by the ALJ, which violated Plaintiff's constitutional due process rights.  (Doc. 18.)  This argument has no merit and may be disposed of summarily.

 The ALJ concluded at step four of the sequential analysis that Plaintiff was not disabled because he could perform his past relevant work as a general laborer.  (R. 67.) At step four, the claimant bears the burden of demonstrating he cannot return to his past relevant work.[26]  If a claimant's impairments do not prevent him from performing

---

[26] Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)("The claimant also bears the initial burden of proving that she is unable to perform her previous work.").

past relevant work, he is not disabled.[27]

To the extent Plaintiff argues that the ALJ's step four determination that Plaintiff could perform his past relevant work was not supported by substantial evidence, the argument fails. As discussed above, the ALJ's determination with respect to Plaintiff's mental RFC was supported by the medical evidence in the record.  Plaintiff's mental RFC as determined by the ALJ was also consistent with the ALJ's conclusion that Plaintiff could perform his past relevant work as a general laborer.  Accordingly, the ALJ's determination that Plaintiff could perform his past relevant work was not error and was supported by substantial evidence.

To the extent Plaintiff argues that his due process rights were violated because a VE did not testify at step four, this argument is likewise without merit.  While the testimony of a vocational expert is often relevant at step five - after the burden has shifted to the Commissioner to prove that there are jobs that exist in significant numbers in the national economy that an individual with Plaintiff's RFC could perform - there is no requirement for an ALJ to use VE testimony to determine whether a claimant can perform her past relevant work at step four.[28]  While the regulations provide that "the services of a vocational expert" *may* be used in making this determination,[29] vocational expert testimony is not necessary to determine whether a claimant can

---

[27] 20 C.F.R. § 404.1520(e).

[28] <u>Hennes v. Comm'r of Soc. Sec. Admin.</u>, 130 Fed. Appx. 343, 345-46 (11th Cir. 2005)(quoting 20 C.F.R. § 404.1560(b)(2)); *see also* <u>Walker v. Comm'r of Soc. Sec.</u>, No. 6:07-cv-1647-Orl-18KRS, 2008 WL 5100120, at *6 (M.D.Fla. Dec. 2, 2008).

[29] 20 C.F.R. § 416.960(b)(2).

perform his past relevant work.[30]

Furthermore, Plaintiff's contention that the ALJ was biased is not supported by any evidence.  A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies.[31]  The presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification; but the burden of establishing a disqualifying interest rests on the party making the assertion.[32] Plaintiff has failed to cite anything in the ALJ's decision – or anything in the record – that suggests bias or prejudice.  Simply because an ALJ does not utilize a VE at step four is insufficient to demonstrate bias. Indeed, if that were the law every decision by an ALJ which ends at step four would be subject to reversal where the ALJ did not also obtain expert testimony from a VE. Rather then evidencing bias the ALJ's decision reflects a thorough and fair evaluation of the evidence and proper application of legal standards.

Accordingly, the ALJ's conclusion that Plaintiff's severe impairments did not prevent him from performing his past relevant work is supported by substantial record evidence, and Plaintiff has failed to demonstrate any evidence of bias by the ALJ.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

---

[30] Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)(concluding "because the ALJ concluded that she [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary").

[31] Schweiker v. McClure, 456 U.S. 188, 195-96 (1982); Withrow v. Larkin, 421 U.S. 35, 47 (1975).

[32] Schweiker, 456 U.S. at 195-96.  See also Liteky v. United States, 510 U.S. 540, 556 (1994).

the Commissioner should be **AFFIRMED**.

      **IN CHAMBERS** in Gainesville, Florida, on April 4, 2012.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**<u>NOTICE TO THE PARTIES</u>**

      **Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**